IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LYNN HANKINS,<br><br>    Plaintiff,<br><br>v.<br><br>LOWE'S HOME CENTERS, LLC,<br><br>    Defendant. | Case No. 23 C 15116<br><br>Hon. LaShonda A. Hunt |

### MEMORANDUM OPINION AND ORDER

Lynn Hankins ("Plaintiff") sued his employer, Lowe's Home Centers, LLC ("Defendant"), for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.* (Count I), Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.* (Counts II and III), Illinois Human Rights Act, 775 ILCS 5/101, *et seq.* (Counts IV and V), and Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* (Count VI). Defendant has moved for summary judgment on all of Plaintiff's claims. (Dkt. 32). For the reasons discussed below, Defendant's motion is granted as set forth herein.

### BACKGROUND[1]

#### I.    Plaintiff's Employment with Defendant and Reporting Structure

Plaintiff (African American) was hired by Defendant in December 2016, as a customer service associate. (Dkt. 39 at ¶ 1). In October 2019, he was promoted to "Sales Specialist Millwork," the position he still holds today. (*Id.*; Pl. Dep., Ex. 1 at 21:11-24, Dkt. 35-1). Plaintiff

---

[1] These relevant facts are taken from the parties' respective Local Rule 56.1 statements and are undisputed unless otherwise noted. The Court refers to Plaintiff's Response to Defendant's L.R. 56.1 Statement of Material Facts as "Dkt. 39" and Defendant's Answer to Plaintiff's L.R. 56.1(b)(3)(C) Statement of Additional Material Facts as "Dkt. 40."

1

works "full-time" at Defendant's location in Naperville, Illinois. (Dkt. 39 at ¶ 1). Although "full-time" employment status requires a minimum of 32 hours per week, and the job description states that a full time Sales Specialist will generally be scheduled for 39-40 hours per week, Defendant has allowed Plaintiff to work only 30 hours per week and still maintain "full-time" status. (*Id.* at ¶ 8). As a result, Plaintiff has always been able to keep his full health insurance benefits. (*Id.*). During his tenure with Defendant, Plaintiff has never been disciplined, denied a promotion, or had his pay decreased. (*Id.* at ¶ 41).

Currently, Plaintiff's immediate supervisor is Ronald Wilder (African American), who serves as the Department Supervisor. (*Id.* at ¶ 2). During the relevant time periods, Wilder reported to Ray Lopez (Latino), the Assistant Store Manager. (*Id.*). Diondre Griffin (African American) is now the Assistant Store Manager. (*Id.*) Griffin (and formerly Lopez) reports to Store Manager Keith Jackson (African American). (*Id.*).

## II.  Plaintiff's Schedule and Requested Scheduling Accommodations

Plaintiff serves as the primary caretaker for his disabled son who requires around-the-clock care. (Dkt. 39 at ¶ 6; Dkt. 40 at ¶ 1).[2] In 2018 and 2020, Plaintiff took leaves of absence to care for his son and take him to medical appointments. (Dkt. 39 at ¶ 6). Plaintiff thus informed Defendant in 2020 that he could only work from 8:00AM-4:00PM on Mondays, Tuesdays, Thursdays, and Saturdays. (*Id.* at ¶ 7). According to Plaintiff, since providing his updated availability to Defendant, he has been scheduled on less than 10 Fridays and Sundays and more than 10 Wednesdays. (*Id.* at ¶ 10). When Plaintiff is scheduled on a shift outside of his stated availability, he is permitted to use intermittent FMLA leave in lieu of working the shift. (*Id.* at ¶ 11). Plaintiff has sought and received intermittent FMLA leave since 2019 and has never been

---

[2] Plaintiff does not claim that he himself is disabled. (Dkt. 39 at ¶ 6).

2

denied leave. (*Id.* at ¶¶ 9, 40). He was unable to take FMLA leave for a six-week period in 2023 when he had not worked enough hours to qualify. (*Id.*). Plaintiff says that Lopez told Plaintiff his availability could not be honored, and he should consider switching to part-time. (*Id.* at ¶ 42).

### III. Racial Comment Made to Plaintiff

According to Plaintiff, his coworker Mark Johnson (White), a fellow "Sales Specialist Millwork" called him "boy" in May 2022. (Dkt. 39 at ¶ 12; Dkt. 40 at ¶ 10). Plaintiff complained to Wilder, Lopez, Jackson, and HR about Johnson's comment, which prompted a meeting with Plaintiff, Jackson, Lopez, and Johnson. (Dkt. 39 at ¶ 13; Dkt. 40 at ¶ 10). Jackson told Johnson that calling an African American "boy" is offensive. (Dkt. 39 at ¶ 14). Plaintiff stated that Johnson and Lopez did not think this was a racial slur. (Dkt. 40 at ¶ 15). Johnson said that he had not intended the word as a racial slur and his grandfather calls him "boy." (*Id.* at ¶ 14). Johnson was not issued formal discipline for this incident but was told that future incidents would result in disciplinary action. (Dkt. 39 at ¶¶ 15, 45).

Plaintiff claims that Defendant failed to document multiple instances when Johnson continued to use inappropriate language towards him, and Johnson suffered no repercussions for using such language. (Dkt. 40 at ¶¶ 16-17). Defendant, however, contends that it did not allow Johnson to continue that behavior and, in fact, Plaintiff testified that he did not hear Johnson call him another racial slur other than "boy." (Dkt. 40 at ¶ 16). Jackson said he told Johnson that future uses of such language would result in discipline. (*Id.*). Jackson did not recall whether he documented the conversation with Plaintiff and Johnson and he does not have an obligation to report these discussions to HR. (*Id.* at ¶ 18). Defendant contends that Johnson never called Plaintiff any other racially insensitive term, and Plaintiff has never complained again about Johnson calling

him a racial slur. (Dkt. 40 at ¶ 16). According to Plaintiff, Johnson has also called him a liar and a thief. (Dkt. 39 at ¶ 16; Dkt. 40 at ¶ 13).

After receiving notice of his right to sue from the EEOC in July 2023 (Compl. at Ex. A, Dkt. 1), Plaintiff brought his lawsuit in October 2023. Defendant seeks entry of summary judgment in its favor, and the motion is fully briefed.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial," *id.* at 324, and support their position with "more than a scintilla of evidence." *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 709 (7th Cir. 2000). Summary judgment is the time for a litigant to "put up or shut up" by "show[ing] what evidence it has that would convince a trier of fact to accept its version of events." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) (quotations omitted). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, all "justifiable" inferences are drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *see also Runkel v. City of Springfield*,

4

51 F.4th 736, 741 (7th Cir. 2022) (non-moving party receives "benefit of conflicting evidence" as well as "any favorable inferences that might be reasonably drawn from the evidence."). Additionally, a court must refrain from weighing evidence or making credibility determinations. *Johnson v. Advocate Health & Hosps., Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citation omitted). Finally, "[s]peculation cannot create a genuine issue of fact that defeats summary judgment." *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 946 (7th Cir. 2024).

## DISCUSSION

### I. Count I – Violations of FMLA

Plaintiff contends that Defendant violated the FMLA when it "repeatedly refused to ameliorate the improper and erratic scheduling of [Plaintiff's] work schedule" (which the Court construes as a claim of interference) and retaliated against him by continuing to schedule him when he was unavailable after he complained. (Compl. at ¶¶ 62-63; Dkt. 1). Defendant argues that the FMLA does not "entitle Plaintiff to a particular schedule," it did not interfere with Plaintiff's FMLA leave, and it did not retaliate against him for using FMLA leave. (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. at 81-83, Dkt. 33).[3] Defendant has the better argument.

The FMLA prohibits an employer from "interfere[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under this subchapter" and "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a).[4] To prove interference under the FMLA, a plaintiff must demonstrate "(1) he was eligible for the FMLA, (2) his employer was covered by

---

[3] Unless otherwise noted, page numbers in citations to the docket reference "PageID #" in the CM/ECF header of the filing, not other page numbers in the header or footer of the document.

[4] The parties do not dispute that Plaintiff is an "employee" and Defendant is an "employer" for purposes of the FMLA. (Def.'s Answer and Affirmative Defenses at ¶ 61, Dkt. 9).

5

the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided notice of his intent to take leave, and (5) his employer denied him FMLA benefits **to which he was entitled**." *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 365 (7th Cir. 2020) (emphasis added).

The dispute here centers around whether Plaintiff was denied FMLA benefits to which he was entitled, and the Court finds that he was not. Plaintiff's interference claim is based on Defendant's refusal to schedule Plaintiff consistent with his stated availability. But, as Defendant notes and Plaintiff does not contest, the FMLA does not entitle employees to any specific schedule. *See, e.g.*, *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 91 n.5 (D.C.C. 2014) (requests for scheduling changes "are generally outside the protections of the FMLA") (*citing Jenkins v. Rinaldi,* No. 1:99CV629, 2001 WL 34564362, at *5 (M.D.N.C. Mar. 23, 2001) for the proposition that "[T]he FMLA is, by its terms, a *leave* act, not a scheduling act.")); *Porter v. Tri-Health, Inc.*, No. 1:16cv00978-WOB, 2018 WL 5779490, at *12 (S.D. Ohio Nov. 2, 2018) (permanent schedule change is not required under the FMLA).

Aside from Plaintiff's complaints about not honoring his preferred schedule, there is no evidence in the record that Defendant denied Plaintiff FMLA benefits to which he was entitled. It is undisputed that Plaintiff sought and had been granted FMLA leave intermittently since 2019. The only time this did not happen is during a six-week period in 2023 when Plaintiff did not qualify for FMLA leave because he had not worked the requisite amount of hours. Plaintiff points out that his hours dipped because he was being scheduled outside of his available times. Even so, his inability to take FMLA leave for that brief timeframe did not result from Defendant denying any leave request. As discussed *supra*, Plaintiff simply is not entitled to the schedule of his choice. At no time does he contend that Defendant denied his FMLA leave request. Thus, Plaintiff has not shown that Defendant interfered with his FMLA rights. *Anderson v. Lawrence Hall Youth Serv.*,

No. 23-2613, 2024 WL 1342586, at *3 (7th Cir. Mar. 29, 2024) (no FMLA interference when requests for FMLA leave were granted).

Plaintiff's claim of FMLA retaliation also fails. To prove a claim of retaliation under the FMLA, a plaintiff must show that he (1) engaged in statutorily protected activity; (2) was subjected to an adverse action; and (3) the adverse action was because of the protected activity (causation). *Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018). Defendant asserts that Plaintiff cannot demonstrate that he was subjected to an adverse action or causation (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. at 83, Dkt. 33), and Plaintiff fails to meaningfully respond to Defendant's arguments (Resp. at 207-210, Dkt. 37).

Both sides agree that taking FMLA leave is a protected activity. But the record contains no evidence that Plaintiff was subjected to *any* adverse action, let alone an adverse action because he took FMLA leave. He was never terminated, disciplined, demoted, or subjected to a pay decrease. At most, Plaintiff maintains that after he refused to shift to part-time status, Defendant started to schedule him to work on days he was not available—Wednesdays, Fridays, and Sundays. (Resp. at 208, Dkt. 37). However, Plaintiff cites no legal authority for the proposition that this constitutes an actionable "adverse action."

"Where there is no evidence the defendant sought to exploit a 'known vulnerability' by altering a plaintiff's work schedule upon return from FMLA leave, a schedule change is not a materially adverse action." *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 799 (7th Cir. 2014). Although the Seventh Circuit has ruled that caring for a disabled son could be a known vulnerability, *Washington v. Illinois Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005), on the facts in this case, no reasonable jury could find that Defendant sought to exploit that situation here. Indeed, since Plaintiff updated his availability in December 2020, he was scheduled on less than

10 Fridays and Sundays and more than 10 Wednesdays. This is quite contrary to *Washington*, where the plaintiff had to use two hours of FMLA leave *per day* after her schedule was changed. Plaintiff speculates that Defendant "manipulated [his] work schedule while knowing it would affect his future ability to take FMLA leave to take care of his son." (Resp. at 209, Dkt. 37). But speculation cannot stave off summary judgment. Furthermore, the Court reiterates that Defendant allowed Plaintiff to maintain full-time employment status (along with full time health benefits) despite working almost 10 hours less per week than other full-time employees. In short, there is nothing in the record to support Plaintiff's contention that he was retaliated against for exercising his rights under the FMLA.

Plaintiff further argues that Defendant interfered with his FMLA rights by violating the FMLA's "usual and customary" notice requirement and violating Plaintiff's privacy rights. (Resp. at 209-210, Dkt. 37). Neither argument is persuasive. First, the FMLA requires an employee to comply with his employer's policy. *See* 29 C.F.R. § 825.303(c) ("When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances."). Defendant's policy required Plaintiff to inform his manager, Jackson, when he needed to take leave. Plaintiff did so, and Jackson redirected him to his assistant manager. The Court fails to see how this interferes in any way with Plaintiff's FMLA rights. Notably, Plaintiff has not cited any legal authority to suggest that if Defendant altered its policy for FMLA leave, doing so violated the FMLA.

Second, Plaintiff's argument that his privacy rights have been violated is equally meritless. As Plaintiff notes, "[r]ecords and documents relating to . . . medical histories of employees or employees' family members, created for the purposes of FMLA, shall be maintained as confidential medical records in separate files/records from the usual personnel files." 29 C.F.R. §

825.500(g). Plaintiff argues that such records can only be disclosed to supervisors and cites 29 C.F.R. § 825.500(g)(1)-(3), ignoring that those subsections apply "[i]f the ADA, as amended, is also applicable[.]" Nevertheless, the assistant store manager is in Plaintiff's supervisory chain of command; thus, Defendant did not violate Plaintiff's privacy rights.

Plaintiff's frustration with these scheduling issues is understandable, as caring for a loved one around the clock is a job in and of itself. But because the FMLA does not entitle Plaintiff to a particular schedule to accommodate his caretaking responsibilities, and there is no other evidence that Defendant interfered with Plaintiff's FMLA rights or retaliated against him for exercising those rights, Defendant is entitled to summary judgment on Count I.

## II. Counts II-V – Violations of Title VII of the Civil Rights Act and the Illinois Human Rights Act (IHRA)[5]

Plaintiff alleges that he was subjected to race-based harassment, discrimination, and retaliation in violation of Title VII and the IHRA. Because Plaintiff failed to oppose Defendant's argument that he cannot prove discrimination, that claim is abandoned. *C&N Corp. v. Kane*, 756 F.3d 1024, 1026 (7th Cir. 2014) (finding that nonmovant's failure to make an argument in response to summary judgment constituted waiver). With respect to the harassment and retaliation claims, Plaintiff cannot prevail on either.

### A. Hostile Work Environment

To establish a hostile work environment claim based on race, a plaintiff must show that (1) he was subjected to "unwelcome harassment;" (2) based on his race; (3) which was "so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working

---

[5] Because Illinois state courts apply the same framework that is applied to Title VII claims in federal court, the analysis of Plaintiff's federal and state claims is identical. *See Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016).

environment;" and (4) there is a basis for employer liability. *Equal Emp. Opportunity Comm'n v. Vill. at Hamilton Pointe LLC*, 102 F.4th 387, 401 (7th Cir. 2024) (quotations and citation omitted). Defendant argues only that Plaintiff cannot establish the third or fourth elements. (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. at 8–4, Dkt. 33). The Court agrees.

### a. Severe or Pervasive

Plaintiff has not shown that he suffered harassment which was "so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment." The Court uses both an objective and subjective test when determining whether harassment was "severe or pervasive." *Equal Emp. Opportunity Comm'n*, 102 F.4th at 401. In other words, "the environment must be one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* (quotations and citation omitted).

Determining whether harassment created an objectively hostile environment requires the Court to consider the totality of the circumstances, including the frequency of the conduct, how severe it is, whether the recipient is physically threatened or humiliated (as opposed to merely an offensive utterance) and whether it unreasonably interferes with an employee's performance. *Id.* at 402. "Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment." *Passananti v. Cook Cnty.*, 689 F.3d 655, 667 (7th Cir. 2012). In addition, the relationship between the harasser and the harassed is "crucial to an accurate appreciation of the impact a harasser's conduct had on the work environment," as the Seventh Circuit has "repeatedly treated a supervisor's use of racially toxic language in the workplace as much more serious than a co-worker's." *Equal Emp. Opportunity Comm'n*, 102 F.4th at 402 (quotations and citation omitted).

No reasonable jury could conclude that Plaintiff was subjected to harassment that was either severe or pervasive. *Equal Emp. Opportunity Comm'n*, 102 F.4th at 402 (conduct need be only severe *or* pervasive, not both). Johnson called Plaintiff "boy" on one occasion and a liar and thief on other occasions. Plaintiff states that he was "humiliated" when Johnson called him a racial slur (Resp. at 211, Dkt. 37) and "felt extremely uncomfortable during his shifts" (*id.* at 212). Neither side seriously disputes that the term "boy, when used to refer to an African American man, can be racially charged and derogatory" and "carries negative connotations." (*Id.*) (quotations omitted). While the subjective test is undoubtedly met in this case, Plaintiff cannot pass the objective test.

Plaintiff cites *Williams v. Phillips 66 Co.*, 72 F. Supp. 3d 938, 956 (S.D. Ill. 2014), stating that "[c]ourts have determined that the use of racial epithets, including 'boy,' can contribute to creating a hostile work environment." (Resp. at 211, Dkt. 37). While that is certainly a true statement in general, it does not apply here. In *Williams*, the Southern District found a genuine dispute existed as to whether the plaintiff's work environment was "objectively hostile" after he presented evidence of, among other things, (1) multiple "direct and highly offensive racial epithets and commentary with undeniable racial undertones," (2) a noose in the office, (3) an offensive poster hanging in the workplace, (4) an offensive sticker placed on the plaintiff's desk, (4) his locker being broken into, (5) his prescription medication being stolen, and (6) his tires being punctured, which occurred over the course of a decade. *Williams*, 72 F. Supp. 3d at 956.

The instant case is readily distinguishable. No doubt Johnson's conduct was reprehensible, but it was an isolated incident which did not physically threaten Plaintiff. "One utterance of the n-word has not generally been held to be severe enough to rise to the level of establishing liability, even though such disrespectful language is deplorable and has no place in the workforce." *Scurlock*

11

*v. IRC, LP*, 716 Fed. App. 544, 546 (7th Cir. 2017) (citing *Nichols v. Mich. City Plant Planning Dept.*, 755 F.3d 594, 601 (7th Cir. 2014) (quotations omitted)). Assuming Johnson also called Plaintiff a liar and a thief, that conduct still fails to rise to the level of severe or pervasive harassment that is actionable. Notably, Plaintiff does not indicate how those statements interfered with his work performance in any way. Accordingly, Plaintiff cannot show that he was subjected to a hostile work environment based on his race.

### b. Employer Liability

Even if Plaintiff could meet his burden—and the Court concludes that he cannot—there would be no basis here for employer liability. When a co-worker is the source of alleged harassment, an employer is only liable if it was negligent in either failing to discover or remedy the harassment. *Equal Emp. Opportunity Comm'n*, 102 F.4th at 403. "An employer is not liable for co-worker harassment if, upon becoming aware of the situation, it took prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring." *Id.* at 405 (quotations and citation omitted). The focus of this analysis is whether the employer has taken action to prevent future harm. *Id.*

It is undisputed that Plaintiff reported Johnson for calling him "boy" and that, upon making this report, their supervisors met with him and Johnson to discuss the incident. Although Johnson was not disciplined at that time, Plaintiff concedes that, after the meeting, Johnson never called him another racial slur. Viewing the totality of the circumstances, no reasonable jury could find Defendant was negligent in failing to remedy the harassment. While Plaintiff contends that Defendant's response was "inadequate," it appears to have been successful considering Plaintiff has never again complained about this conduct. Because Plaintiff cannot prove employer liability, his hostile work environment claim fails for this reason too.

B.      **Retaliation**

Plaintiff's final claim under Title VII and the IHRA is one for retaliation. "For a Title VII retaliation claim to survive summary judgment, a reasonable jury must be able to find that: (1) [Plaintiff] engaged in Title VII protected activity; (2) [he] suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lohmeier v. Gottlieb Memorial Hospital*, 147 F.4th 817, 829 (7th Cir. 2025).

The Court can quickly dispose of this retaliation count. Plaintiff certainly engaged in protected activity when he complained of what he perceived to be racial discrimination in his workplace. Plaintiff now argues for the first time in response to summary judgment that he was subjected to adverse actions—being moved to a "less prominent department" and "removed from the mentor program without explanation."[6] The Court disregards those points, though, as they come too late. "A plaintiff cannot create a genuine issue of material fact, thereby precluding summary judgment, by raising facts for the first time in response to defendant's motion for summary judgment which were not raised in the complaint."). *Khan v. First Am. Title Co.*, No. 16 C 9493, 2018 WL 4333626, at *5 (N.D. Ill. Sept. 11, 2018) (citation and quotations omitted).

Even if they were timely and properly before the Court, they do not alter the outcome since Plaintiff cites no evidence whatsoever, except his own speculation, that these actions were caused by his complaints. Plaintiff states that "these repercussions were a result of [Plaintiff's] complaint." (Resp. at 213, Dkt. 37). Without more, that conclusory statement is far from sufficient to

---

[6] In its opening brief, Defendant clearly expected Plaintiff to argue that its failure to ban a man from entering the store after he came in and accused Plaintiff of sleeping with his wife constituted a materially adverse action. (Def.'s Memo of Law in Supp. of Mot. for Summ. J. at 86-88, Dkt. 33). This is understandable, as the point was raised in Plaintiff's complaint. However, Plaintiff makes no such argument, and so the Court declines to consider it further.

demonstrate any causal link. Therefore, summary judgment is granted in Defendant's favor on counts II-V.

### III. Count VI – Violation of the Illinois Wage Payment and Collection Act

Finally, Plaintiff brings one claim under the Illinois Wage Payment and Collection Act (IWPCA), alleging that "Lowe's violated the IWPCA when it failed to pay [Plaintiff] $27.00 per hour, which is the wage that Lowe's promised to pay him." (Compl. at ¶¶ 90-96, Dkt. 1). The Court declines to exercise supplemental jurisdiction over this remaining state court claim and thus dismisses it without prejudice to timely refiling in an appropriate forum. *See* 28 U.S.C. § 1367(c)(3) (The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").

### CONCLUSION

For all the foregoing reasons, Defendant's motion for summary judgment is granted and judgment is entered in favor of Defendant on Counts I-V. Count VI is dismissed without prejudice.

**DATED**: October 23, 2025         **ENTERED**:

*LaShonda A. Hunt*
LaShonda A. Hunt
United States District Judge